Good morning, Your Honors. My name is Noreen Barsana, and I represent the petitioner Loretto Quintero-Molina. I'd like to reserve two minutes for rebuttal. The issues to be resolved today are whether the correct legal standard was used in whether Mr. Quintero-Molina is more likely than not to be tortured upon being returned to Mexico, and also whether Mr. Molina needs to specify a particular persecutor to prove that it's more likely than not that he will be tortured. As to the first issue, the root of the issue is whether or not a particular threat was found. In this case, the reason why the incorrect legal standard was used is that the Convention Against Torture does not require nexus or a finding based on a particular social group. And the court in this case, the immigration judge, found that because Mr. Quintero-Molina was unable to identify a persecutor, that that meant that he, it would be impossible or speculative to find that he could be tortured. However, that's not the case. In this case, the acts were not random. It's clear that the... killings of his family in Mexico, that it was, the connection was ambig... to his situation, the connection was ambiguous. How do you respond to that? Well, Your Honor, the connection is logical. It's that Mr. Molina was, in 2006, told that he had to respond for what occurred, and subsequently... You mean the loss of the cocaine? Yes, Your Honor. And subsequently... What was it, 69 kilograms? 63. 63 kilograms. Yes, Your Honor. And subsequently, multiple members, seven or eight of his family members were subsequently killed after that, two of which were asked whether or not they were part of the Molina family. And so it's not ambiguous. It's logical that there's a connection between the family and that while we can't base this on a protected ground, it's basically that the discrimination against the family or the particular threat against this family is enough to rise to the level of a particular threat to Mr. Molina to be tortured if he's returned to Mexico. And the torture, the sort of torture, in this case, as to the particular persecutor, as to whether or not it's more likely, well, this case should go back to the district court because it's not a misinterpretation to say that the agency and the judge required a specific perpetrator to be known. What the judge indicates, as I said, is that it's impossible to evaluate the risk. Well, we know that from INRI J.E. 231 and then at 291, BIA decision 2002, that specific grounds must exist to indicate that a person is at risk. And the specific grounds in this case are that Mr. Molina is being threatened by someone. And unlike asylum, a persecutor doesn't need to be specified, only that the government is acquiescent. And it would be unfair and it would be an unreasonable burden to place on Mr. Molina to identify a persecutor because logically that identity is not readily available. So it's your view that the cartel in Mexico was the threat? Yes, Your Honor, that is the view, but... Not any one particular individual? Well, the fact that the same motive, or I'm sorry, the same pattern was used. It was a black SUV shooting at the family is evidence that yes, it is a cartel, but specifically that it's a particular cartel. So the fact that Mr. Molina can't specifically identify the cartel doesn't mean that there's no particular threat to Mr. Molina. Given that the incidents that occurred were in the newspaper, obviously it's known to the government and the refusal to contain the issue or to prosecute the offender, that's in itself acquiescence. And nowhere in the Convention Against Torture is it necessary to say this is the cartel that's persecuting this man. Instead, it's whether or not there's a particular threat of torture. And in this case, the particular threat of torture is that if Mr. Molina does return to Mexico, we don't know who his persecutor is. That obviously is apparent, but the reason this falls under Convention Against Torture is that if he goes back, the particular threat is to Mr. Molina and his family, but particularly to Mr. Molina because- You see, this is a problem I see with this record and I don't know if you can help me on this, but the problem is in the record, all of these relatives are themselves affiliated with gangs and in the drug business have been convicted for drug deals, right? In this country and in Mexico. And so I think what the BIA did is infer that, well, it's just as reasonable to think that these other people that were gone after by gangs were gone after because of their own activities, not because of their relation to the petitioner. And so there's no nexus between those things and the petitioner, right? Isn't that the basic basis of the denial of the connection between what and that they, I mean, that's a sign that they're after him? Well, Your Honor, it's not necessarily that as to two of the family members that were murdered, yes, they were themselves involved in some issues and the two that were threatened, but there were also five family members that had nothing to do with cartels or drugs. They were just simply part of the family and known to be, one of them was the mother of one of the minor children. So the fact that even killing minor children- Well, maybe that's a possible inference, but that's not the only reasonable inference. The problem is you see, I mean, the BIA is entitled to draw its own inferences from that evidence, right? And it seems to me their inference is reasonable. Well, Your Honor, while it could be reasonable, the more reasonable or logical is that the family's being targeted and that Mr. Molina is being targeted. Well, the family is who? The family is the families of his cousins who are drugged. No, it's his cousins were subjected to more retaliation than his brothers, right? Yes, Your Honor. And why should, if they're after him, go after the cousins instead of the brothers? Well, Your Honor, because they all share a last name and at the time of the brothers were not in upon arriving to Mexico shortly after they were deported from the United States to Mexico, that's when they were kidnapped and one of them was kidnapped and one of them was threatened at that point and were forced into hiding. So the fact that right now they are not necessarily being, I'm sorry, that they are being persecuted based on their familial relationship and the fact that they aren't hiding is evidence of that. Well, tell me this, what is the strongest evidence you can point to in the record that all these, you know, cartel actions against his cousins and his brothers, his relatives, was based upon their wanting to get even with the petitioner? What evidence is there of that? Well, Your Honor, the fact that Mr. Quintero Molina has the surname Molina and the fact that when the cartel or whoever it was did go to Mr. Quintero Molina's brother, they specifically asked him if his surname was Molina, to which he responded that he obviously lied and said it was not to protect himself. So that would be the evidence that it's because of the surname and because of Mr. Molina, which is a particular threat. And with that, I will direct this to the Court. May it please the Court, Victor Lawrence on behalf of the Attorney General. This Court should deny this petition for review because substantial evidence supports the Board's determination that Quintero suffered no previous harm in Mexico and that he has not met his burden of proving that it's more likely than not that he would suffer harm in the future with the consent or acquiescence of a public official or anybody else acting under an official capacity. As the Court's aware, this case is reviewed under a substantial evidence standard. Therefore, as Judge Tashima referred to, to the extent there's more than one reasonable inference, this Court has to be convinced that the corrective, the inference that the petitioner wants is something that a reasonable adjudicator would be compelled to find. And we submit that there's no evidence in the record. So let me ask you this. Was it legal error for the Board or the IJ to say that he didn't identify, there's no, he can't identify who the torturer might be? Not at all because... Why not? Because... Because that's not what our case law says. Well... If you identify a specific individual who you fear who's going to torture you, should you return back to the country? Right. But as the immigration judge indicated, and as my opponent conceded, he wasn't indicating that you have to have an unknown perpetrator in order to proceed with the claim under the Convention Against Torture. But what you have to have at some point is to be able to prove that it's more likely than not that torture is going to occur to this individual. And he, the immigration judge, quite specifically said that without knowing who this, he received these threats from or who these assailants were, that it's impossible for him to evaluate the risk that this person might have. Who knows what cartel it is that is looking for Mr. Molina. If it's a really big cartel with lots of resources that can find him, that's one story. It's one way to evaluate the risk. Do you think his fear is completely, you know, unfounded? That there's no basis for his fear? I mean, he's involved in a drug deal up here. He loses 63 kilograms of cocaine. At the time, the street value must have been really significant. That's a lot of cocaine. That's a lot of cocaine. If I remember from my days, I used to try these cases. Right. But whether or not his fear... The cartel, whoever it was, who was trying to import, who was trying to distribute those drugs were probably really ticked off that three days later, he's out on the street again. Probably a pretty significant cartel. One can speculate, but again, you could... Why is that speculative? I mean, it seems pretty reasonable. You just don't walk, you just don't drive around with 63 kilograms of... But even if it was a cartel without knowing, a large cartel, without knowing who they are or what their resources are or what they're interested in specifically... Well, you've got some expert testimony in here, which the IJ found to be credible. The IJ found all the testimony to be credible. Perhaps this is the way these cartels operate and that they take it out on the family. I mean, the IJ did a pretty thorough job, but it seemed to me that there's a... Could people really come to this conclusion? I don't know. Very hard to decide that, but they put on a pretty strong case. So if I could address that, Your Honor. Yes, he presented an expert who gave several reasons why he believed in the aggregate that Mr. Molina would suffer harm in the future. But the immigration judge, as you said, wrote a very thorough opinion in which he specifically analyzed the expert's testimony. He did find him to be credible. But whether he's credible or not, of course, is not the issue. The issue is whether he's shown in the aggregate that there's a more probable than not likelihood that he would suffer torture. Let me ask you, did the IJ actually consider everything in the aggregate? He seemed to go through each claim and then just said, no, not this, not this, not this. But he doesn't... There's really no sense... I didn't get a sense that he looked at everything and he says, looking at all of this. I do think so, Your Honor. Because first of all, the expert himself, when he presented his testimony, he indicated that he believed in the aggregate for all the various reasons that it was more likely than not that he would suffer torture upon return. So by the immigration judge looking at what the expert said and considering his testimony thoroughly individually and in the aggregate and determining that despite that he's a credible witness, he still didn't think that there was a more probable than not likelihood of torture, that he did consider everything both individually and in the aggregate. And that's what's required by this court and that's what this agency did. And therefore, that's why we believe under substantial evidence standard... Can you point to anything in either the IJ's order or the BIA's order would indicate that they looked at all the reasons advanced in the aggregate? Sure. A couple of things on that, Your Honor. First, I note that in the immigration judge's order, both at page 66 and page 69 of the record... 56 and what? 66 and 69. Yeah. They cite to Cole versus Holder. And of course, the main holding of Cole versus Holder is to look at everything both individually and the aggregate. It shows that the immigration judge was aware of the court's law and looking at things in the aggregate and therefore was following it. But aside from that, Your Honor... You're not saying that he said that he was looking at it in the aggregate. You're just saying that because he cited Madrigal versus Holder, which stands for a lot of things, that meant that he did look at it in the aggregate. Well, this is one point, yes. But Cole versus Holder does stand for several things, but the principal holding of that case is to look at things in the aggregate. But let me point something else out that I think demonstrates that everything was looked at in the aggregate. First, if you look at the immigration judge's opinion, I'm specifically referring to the last three pages of 67 through 69. In the last paragraph on page 67, he's looking at this issue of targeting family members. What were family members really being targeted because of their last name? And he comes to the conclusion at the top of page 68 that, look, he could only speculate. He can't determine whether any of these past instances against other members of the Molina family had anything to do with the risk that Mr. Molina faces. So he's totally canceled that idea out. So there's no need... When you have three factors to look at, and one of them is completely dismissed as something you can't even evaluate, that's not something you have to look at. Well, you don't try to aggregate it. I'm sorry? You don't try to aggregate it. Right, you can't aggregate something if it's a zero risk factor. It's not as if he said these didn't occur. He said we can only speculate as to whether they occurred. Right. Now, whether you can only speculate in the abstract as to one incident doesn't mean it's not worth considering along with other factors, because those other factors may then add to the... Well, it would otherwise just be speculation. You can say in light of these other things, considering it together, it's not such speculation, but there is other evidence that makes us feel collectively. Your Honor, I concede that this opinion would be stronger if it had one sentence that said... In addition, in everything in the aggregate, we find that there's less than 50% risk of torture. But it lacks that sentence, but contextually, when you look at it, they've looked at every single incident, dismissed them as either being speculation or not a risk at all with respect to, for instance... Don't you think that if I said... To take a totally different case, there are 10 people who are the brothers, and I look at brother A and I say, well, I can't tell that in his case, it's anything but speculation. Then I look at brother B and I say the same thing. But in order to make a meaningful decision, you'd have to say, but if I look at these 10 items, that each one is separately is speculation. I look at the 10 of them and then it's no longer speculation. Aggregating these speculative items, it rebuts the idea that they're speculative if I look at them all together. So again, Your Honor, I think that that's what the agency did. It was aware of the law on that. The court's case law is well known that you have to look at things in aggregate. And I think by dismissing these things individually, still the immigration judge was looking at everything, looking carefully at Dr. Behrman's testimony, which considered everything in the aggregate, but still finding, even though Dr. Behrman was credible, findings still that he did not show that it was more than 50% likelihood that he would suffer torture is indicative that the agency considered evidence in the aggregate. But importantly, Your Honor, that's only half the story, whether or not it's more likely than not that he would suffer torture, because you still have to show that there's state action involved. In other words, that the torture was done with the consent or acquiescence or will be done with the consent or acquiescence of a public official. In your brief, it says, in your brief, it refers also to the inability to control. That is a factor, yes. Okay, so it doesn't have to be the state participating. It can just be, and I think there's certainly plenty of evidence in the record, that the state is unable to control these gangs. First of all, even Dr. Behrman testified that the government has been successful in prosecuting drug kingpins. So there is evidence in the record that the board could rely upon to show substantial evidence that they're relying on in order to come to the conclusion that they did. But importantly, though, my opponent didn't even argue state action in her opening brief to the court, and therefore, she's waived that issue. And if the court looks at it in that fashion, she's waived half the argument regarding the Convention Against Torture by only demonstrating that it's more likely than not. She didn't even touch on the board's opinion where it said that there's nothing to show consent or acquiescence on behalf of a public official. So between all that, I think that the court has enough to rely upon here to show that the board's opinion is supported by substantial evidence. Okay, thank you, counsel. Thank you. Good morning, Your Honors. So this case does rise to the level of a logical threat. And in this case, the I.J. focused on speculation, not the aggravation. He looked at each case individually. Like Cole, in Cole, the I.J. failed to review whether or not having a tattoo would cause someone issues in seeking medical help in a medical facility. In this case, this is not speculation. It's logical that it rises to a level of particular threat. And in my brief, I did indicate that the government acquiesced because it not only refused but failed to contain the gang. And Dr. Borman also said that when a kingpin is prosecuted, that it creates more persecution and someone will quickly replace the kingpin. So in this case, it is logical that Mr. Quintero Molina will be tortured. But also that the I.J. based his decision off of Mr. Quintero Molina not being able to specify this is the persecutor, which that's not the standard.  Thank you, counsel. Thank you. Okay, the target is submitted.
judges: Reinhardt, Tashima, Paez